UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| MIKHAEL EL-BAYEH, | ) |
| Plaintiff, | ) |
| v. | ) Civil No. 25-10476-LTS |
| MASSACHUSETTS DEPARTMENT OF STATE POLICE et al., | ) |
| Defendants. | ) |

ORDER ON MOTIONS TO DISMISS (DOC. NOS. 16, 20)

December 18, 2025

SOROKIN, J.

Mikhael El-Bayeh, representing himself, initiated this proceeding after he was stopped and ticketed for speeding by Trooper Michael P. Sierra. The defendants have moved to dismiss for lack of subject-matter jurisdiction, for failure to state a claim, and under the doctrine of res judicata. Doc. Nos. 16, 20, 29, 36.[1] El-Bayeh opposes dismissal and has separately moved for a preliminary injunction. Doc. Nos. 37, 45. The motions are ripe, and for the reasons that follow, the defendants' motions to dismiss are ALLOWED. El-Bayeh's motion for preliminary injunction is thus DENIED as moot.

I.  BACKGROUND

El-Bayeh has a storied history with a stretch of U.S. Route 3 running through Burlington, Massachusetts. On July 26, 2018, he was stopped on this road by the Massachusetts State Police

---

[1] Citations to "Doc. No. __" reference documents appearing on the court's electronic docketing system; pincites are to the page numbers in the ECF header. The operative complaint is available at Doc. No. 24.

("MSP") and issued a citation that alleged "a single violation for speeding, 96 miles per hour ["MPH"] in a 55 [MPH] zone."[2]  Doc. No. 24-9 ¶ 89.  El-Bayeh contested this citation in the Woburn District Court, but he was found responsible.  Id. ¶ 90.  He exhausted all appellate avenues, to no avail.  Id. ¶¶ 90–94; see also Dep't of State Police v. El-Bayeh, 163 N.E.3d 1040 (Table) (Mass. App. Ct. 2021).  Meanwhile, El-Bayeh filed a complaint against MassDOT and MSP in the Suffolk County Superior Court on June 21, 2019, challenging the legality of the speed limit on U.S. Route 3.  Doc. No. 24 ¶¶ 120–122; see Doc. No. 24-1.  The Superior Court dismissed El-Bayeh's claims on February 3, 2020, and he again exhausted all avenues for appeal without success.  Id. ¶¶ 124–125; see Doc. No. 24-2; El-Bayeh v. Mass. Dep't of Transp., 168 N.E.3d 372 (Table) (Mass. App. Ct. 2021), appeal denied, 171 N.E.3d 721 (Table) (Mass. 2021).

On August 4, 2021, the day after the Supreme Judicial Court ("SJC") denied El-Bayeh's motion to reconsider his application for further appellate review in his challenge to the Route 3 speed limit, El-Bayeh was stopped by Sierra on the same stretch of road, allegedly driving seventy-two MPH.[3]  Doc. No. 24 ¶¶ 21, 23.  Sierra charged El-Bayeh with a speeding offense and assessed a fine of $175, payable within twenty days.  Id. ¶¶ 28, 32.  El-Bayeh appealed the citation to the Woburn District Court on August 23, 2021, and a magistrate judge found El-Bayeh responsible but reduced the fine to $105.  Id. ¶¶ 170, 173; Doc. No. 24-9 ¶¶ 164–166.  El-Bayeh then appealed to the Massachusetts Appeals Court ("MAC"), which granted a stay in the case until January 10, 2025, for El-Bayeh to litigate his concurrent suit described below.  Doc. No. 24 ¶¶ 173, 176–182.  His fine remains unpaid.

---

[2] El-Bayeh has not conceded that he was driving this fast, nor does it seem he has ever admitted to speeding at all.
[3] Again, El-Bayeh has never conceded he was speeding.  On July 22, 2024, the Massachusetts Department of Transportation ("MassDOT") increased the speed limit to sixty-five MPH.  Doc. No. 24 ¶ 157.

On September 21, 2021, El-Bayeh filed another suit challenging the legality of the fifty-five MPH speed limit, this time in the Middlesex County Superior Court. Doc. No. 24 ¶ 141; see Doc. No. 24-9 (operative complaint). He named as defendants MassDOT; "Jonathan Gulliver, in his individual and official capacity as Highway Administrator of [MassDOT]; Colleen Ogilvie, in her individual and official capacity as Registrar of Motor Vehicles; [MSP]; Christopher S. Mason, in his individual and official capacity as Colonel of [MSP]; [and] Michael P. Sierra, in his individual capacity." Doc. No. 24-9 at 2, ¶¶ 4–10. El-Bayeh asserted eleven claims for relief, including six claims under 42 U.S.C. § 1983 and one requesting declaratory judgment that the promulgated fifty-five MPH speed limit is void. Id. ¶¶ 171–205. The Middlesex Superior Court dismissed all claims on April 13, 2023, and El-Bayeh again unsuccessfully appealed. Doc. No. 24 ¶¶ 145–146; see Doc. No. 24-10; El-Bayeh v. Mass. Dep't of Transp., 238 N.E.3d 830 (Table) (Mass. App. Ct. 2024), appeal denied, 245 N.E.3d 1040 (Table) (Mass. 2024).

Following the SJC's denial of review, El-Bayeh attempted to further stay the appellate proceedings challenging the citation itself, stating there was "newly available evidence supporting a prima facie claim of selective prosecution." Doc. No. 24-13 at 4 (emphasis in original). In support of this request, he submitted to the MAC a spreadsheet he had created illustrating all 421 written warnings for speeding reported by Sierra between July 1, 2019, and October 14, 2024. Id. at 12–13; Doc. No. 24-15 at 23–28. El-Bayeh included in the spreadsheet the difference between the posted speed limit and the reported speed of each violator, finding the average difference was sixteen MPH. Doc. No. 24-13 at 12–13. El-Bayeh did not submit similar data for citations issued by Sierra assessing fines for speeding (instead of mere warnings) in the same time period. The MAC denied a further stay on February 5, 2025. Doc. No. 24 ¶ 190.

El-Bayeh filed his initial complaint with this Court on February 27, 2025, then filed yet another motion to stay with the MAC the following day.  Id. ¶ 192; Doc. No. 1.  The latter request was denied on March 3, 2025, and the MAC proceedings remain pending.  Doc. No. 24 ¶¶ 193–194; see also Doc. No. 24-17.

The "newly available evidence" referenced by El-Bayeh concerns two traffic stops made by Sierra in the fourteen months following El-Bayeh's most recent stop.  On March 30, 2022, Sierra stopped a vehicle driven by Daniel J. Snow along U.S. Route 3 in Bedford, Massachusetts.[4]  Doc. No. 24 ¶ 34.  Snow was wearing a jacket with a patch that read "MIDDLESEX SHERIFF'S OFFICE" on his left sleeve.  Id. ¶ 38.  Sierra informed Snow that he was stopped because he was going ninety-five MPH, but after running a check on Snow's license and registration, he issued Snow a written warning without a fine.  Id. ¶¶ 41, 44–46.  On October 2, 2022, Sierra stopped Thomas Blair on Route 2 in Littleton, Massachusetts.[5]  Id. ¶ 63.  Blair wore a baseball cap embroidered with the abbreviation "LFD," and when Sierra asked Blair where he worked, Blair replied: "Lincoln Fire Department."  Id. ¶¶ 67, 70.  Sierra told Blair that he had been stopped for driving eighty-six MPH in a fifty-five MPH zone, but again issued a written warning without a fine after running a check on Blair's license and registration.  Id. ¶¶ 71, 73.  El-Bayeh alleges the reason Sierra did not assess a fine against Snow or Bair was their affiliation with governmental entities.[6]  Id. ¶¶ 55, 82.

---

[4] The footage from Sierra's body-worn camera is available here: https://youtu.be/C2qVqxZ4xRc.  Doc. No. 24 ¶ 36.

[5] The footage from Sierra's body-worn camera is available here: https://youtu.be/v_x2Yy2sI4I.  Doc. No. 24 ¶ 65.

[6] El-Bayeh alleges that he "is not and has never been a member of law enforcement or a fire department."  Doc. No. 24 ¶ 30.  He has not alleged that this fact was known to Sierra at the time of the traffic stop.

On May 19, 2025, El-Bayeh filed an amended complaint with this Court, asserting claims against the following defendants:

> Geoffrey D. Noble, in his official capacity as Colonel of the [MSP]; Michael P. Sierra, in his individual capacity and official capacity as a uniformed member of the [MSP]; Jonathan Gulliver, in his official capacity as Highway Administrator of the [MassDOT]; Colleen Ogilvie, in her official capacity as Registrar of Motor Vehicles; [and] Marian T. Ryan, in her official capacity as Middlesex County District Attorney.[7]

Id. at 1; see also id. ¶¶ 15–20.

El-Bayeh brings three claims under the Fourteenth Amendment and 42 U.S.C. § 1983. Id. ¶¶ 202, 209, 215. The first is for selective enforcement under the Equal Protection Clause, alleging Sierra treated El-Bayeh worse than "other similarly situated individuals" due to their "affiliation with a governmental entity." Id. ¶¶ 201–207. El-Bayeh also asserts a selective prosecution claim, alleging Sierra deprived him of his right to equal protection by giving "favorable treatment [to] other similarly situated individuals . . . based on an arbitrary classification—affiliation with a governmental entity." Id. ¶¶ 208–213. Finally, El-Bayeh brings a procedural due process claim against Defendant Gulliver for allegedly "fail[ing] to provide El-Bayeh with fair notice . . . that the fifty-five [MPH] regulatory speed zone on U.S. Route 3 was enforceable." Id. ¶¶ 214–219.

Along with monetary damages from Sierra individually, El-Bayeh seeks declaratory judgments in his favor, and both preliminary and permanent injunctions "prohibiting [the] Defendants from taking any future enforcement or prosecutorial action against El-Bayeh . . . from the alleged August 4, 2021[,] speeding violation." Id. at 42–43. The defendants move to

---

[7] Though named in the original complaint, MSP was omitted from the Amended Complaint. Compare Doc. No. 1 at 1, with Doc. No. 24 at 1. In this Order, the Court refers to all five named defendants, to the extent they are sued in their official capacities, as "the Commonwealth Defendants." Only Sierra is also sued in his individual capacity.

dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[8] See Doc. Nos. 17, 21, 29, 36.

## II. LEGAL STANDARD

Jurisdictional issues must be decided before delving into any questions of fact or law. Bell v. Hood, 327 U.S. 678, 682 (1945); see also Ne. Erectors Ass'n of BTEA v. Sec'y of Lab., Occupational Safety & Health Admin., 62 F.3d 37, 39 (1st Cir. 1995) ("When faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court . . . should ordinarily decide the 12(b)(1) motion first."). Since immunity acts as "a limitation on the federal court's judicial power," Calderon v. Ashmus, 523 U.S. 740, 745 n.2 (1998), immunity doctrines are often deemed jurisdictional questions appropriately addressed first, Mulero-Carrillo v. Román-Hernández, 790 F.3d 99, 105 (1st Cir. 2015). Dismissal is appropriate when "the facts alleged in the complaint, taken as true, do not justify the exercise of subject matter jurisdiction." Muniz-Rivera v. United States, 326 F.3d 8, 11 (1st Cir. 2003). The party invoking federal jurisdiction (here, El-Bayeh) has "the burden of proving its existence." Jonson v. Fed. Deposit Ins. Corp., 877 F.3d 52, 56 (1st Cir. 2017) (citation modified).

To survive a Rule 12(b)(6) challenge, a complaint must state sufficient factual matter that, when accepted as true, establishes a facially plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The complaint must set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Courtemanche v. Motorola Sols., Inc., 774 F. Supp. 3d 289, 310 (D. Mass. 2025) (quoting Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008)). Claims are considered

---

[8] The defendants also invoke res judicata, based on the Middlesex County Superior Court suit asserting claims arising out of the same traffic stop. See Doc. No. 24-9. Since El-Bayeh's claims are subject to dismissal under Rules 12(b)(1) and 12(b)(6), the Court need not evaluate res judicata here.

facially plausible where a court can draw a "reasonable inference that the defendant is liable for the misconduct alleged." Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 11 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678). A claim must have a likelihood greater than a mere possibility to be plausible, and determining plausibility is a context-specific task that requires courts to draw on "judicial experience and common sense." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (quoting Iqbal, 556 U.S. at 679).

III. DISCUSSION

    A. The Commonwealth Defendants

El-Bayeh's claims against the Commonwealth Defendants are barred by the doctrine of sovereign immunity. "Since official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent," Monell v. Dept. of Soc. Servs. of N.Y.C., 436 U.S. 658, 690 n.55 (1978), "a suit against a state official in his or her official capacity . . . is a suit against the official's office" that is "no different from a suit against the State itself," Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)). It is settled that "a State is not a 'person' against whom a [42 U.S.C.] § 1983 claim for money damages might be asserted." Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002) (citing Will, 491 U.S. at 66). Nor did Congress intend to abrogate sovereign immunity under the statute. Buckley v. Fitzsimmons, 509 U.S. 259, 268 (1993); Tenney v. Brandhove, 341 U.S. 367, 376 (1951). Therefore, the Commonwealth Defendants generally enjoy sovereign immunity against suits brought against them in federal court in their official capacities.

El-Bayeh contends that the Ex parte Young exception to sovereign immunity applies here. Doc. No. 38 at 3–5; Doc. No. 45 at 5. Under this exception, state officials who have taken unconstitutional actions to enforce state law maintain immunity from retrospective relief but may

be subject to injunctions awarding prospective relief. Ex parte Young, 209 U.S. 123, 159–60 (1908); accord Edelman v. Jordan, 415 U.S. 651, 665–66 (1974). To determine whether the exception applies, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, 645 (2002) (citation modified). Where there is no ongoing violation by state officials, "there is no prospective or ancillary relief to grant." Cotto v. Campbell, 126 F.4th 761, 768 (1st Cir. 2025), petition for cert. filed, No. 24-1307 (June 18, 2025).

El-Bayeh's alleged harm cannot be characterized as "ongoing" for the purpose of the Ex parte Young exception, even assuming he was harmed by a violation of federal law during the traffic stop. The First Circuit recently addressed this principle. In Cotto, the plaintiffs sought an order requiring the Commonwealth to return property the SJC had determined was wrongfully forfeited. 126 F.4th at 765. Notwithstanding the Commonwealth's potential "continuing liability for a past harm," the First Circuit found no ongoing violation of federal law arising from the failure to return the property. Cotto, 126 F.4th at 769. The same reasoning applies here. El-Bayeh alleges an ongoing violation of federal law because he "continues to be in jeopardy of being coerced to remit the imposed assessment and suffer the associated collateral penalties based on this unconstitutional claim against him." Doc. No. 38 at 4. In other words, he still must pay the fine he was assessed in the past, and he may suffer adverse collateral consequences if he fails to do so. Even if El-Bayeh's constitutional rights were violated during the traffic stop, he does not plausibly allege an ongoing violation of federal law by the Commonwealth Defendants. Any "continuing liability" of Sierra or other government officials "for a past harm" does not transform actions to enforce the citation and recover the assessed fine into an ongoing

8

constitutional violation. The Ex parte Young exception thus cannot be applied here to circumvent sovereign immunity.

One final point bears mention. El-Bayeh can mitigate any "associated collateral penalties" he fears will arise from his failure to pay the assessed fine. If he exhausts all appeals and is nevertheless found responsible for the ticket, he may avoid license suspension or contempt by paying the fine. Plaintiffs, including those with § 1983 claims, have a general duty to mitigate their damages. E.g., Bogan v. City of Bos., 489 F.3d 417, 428 (1st Cir. 2007). El-Bayeh may do so here—and, were he to plausibly state a claim against Sierra or another defendant challenging the lawfulness of the stop and then prevail on the merits of that claim, he could recover the fine he paid as a part of his damages.

Because sovereign immunity prevents El-Bayeh from obtaining monetary damages or other retrospective relief against the Commonwealth Defendants, and because El-Bayeh has not plausibly alleged an ongoing violation of federal law, this Court lacks subject-matter jurisdiction over nearly all of his claims. The motions to dismiss are ALLOWED as to all claims asserted against the Commonwealth Defendants.

    B.    Sierra in his Individual Capacity

All that remains are El-Bayeh's selective prosecution and enforcement claims against Sierra in his individual capacity.[9] These claims must also be dismissed for failure to state a claim.

---

[9] El-Bayeh's claim for a due process violation is not plausibly alleged against Sierra in his individual capacity. Sierra is not responsible for the promulgation of speed limits, and nothing in El-Bayeh's pleading plausibly alleges otherwise.

El-Bayeh has failed to plausibly allege a violation of his Constitutional rights.[10] Plaintiffs stating a claim for relief under 42 U.S.C. § 1983 must "establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49–50 (1999); accord Lindke v. Freed, 601 U.S. 187, 194 (2024); Pike v. Budd, 133 F.4th 74, 83 (1st Cir. 2025); Yaghoobi v. Tufts Med. Ctr., Inc., 762 F. Supp. 3d 85, 92 (D. Mass. 2025). Section 1983 creates no rights of its own; instead, "it merely provides remedies for deprivations of rights established elsewhere." City of Okla. City v. Tuttle, 471 U.S. 808, 816 (1985). The first element of any claim brought under § 1983 is thus "whether the plaintiff has been deprived of a right secured by the Constitution and laws of the United States." Martinez v. California, 444 U.S. 277, 284 (1980) (citation modified). "[A] violation of state law[] is not inherently sufficient to support a § 1983 claim." Boveri v. Town of Saugus, 113 F.3d 4, 7 (1st Cir. 1997); accord Durand v. Harpold, 807 F.3d 392, 394 (1st Cir. 2015).

El-Bayeh argues he was denied equal protection of the laws because Sierra denied him the "favorable treatment" Sierra afforded "other similarly situated individuals . . . based on an arbitrary classification—affiliation with a governmental entity." Doc. No. 24 at 39–40. But "affiliation with a governmental entity" is not a suspect class, nor does it implicate a fundamental right under the Constitution, so classification on this basis would not trigger heightened scrutiny.

---

[10] This finding supports dismissal for two reasons. First, the claims fail to withstand Sierra's Rule 12(b)(6) challenge. And second, Sierra would likely enjoy qualified immunity without a plausible allegation of a constitutional violation. See Rocket Learning, Inc. v. Rivera-Sánchez, 715 F.3d 1, 8 (1st Cir. 2013) (describing two-step qualified immunity inquiry asking "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was clearly established at the time of the defendant's alleged violation" (citation modified)). The Court limits its discussion in the text to Rule 12(b)(6), which straightforwardly warrants dismissal.

See S.A. Sch. Dist. v. Rodriguez, 411 U.S. 1, 28 (1973) (stating traditional indicia of suspect class is history of political powerlessness); see also United States v. Carolene Prods. Co., 304 U.S. 144, 152 n.4 (1938) (noting "discrete and insular minorities" are classes that are entitled to heightened scrutiny); cf. Mass. Bd. of Ret. v. Murgia, 427 U.S. 307, 313 (1976) (per curiam) (holding right of governmental employment is not fundamental).  As such, any equal protection claims on this classification would be subject to rational basis review.  Roman Cath. Diocese of Brooklyn v. Cuomo, 592 U.S. 14, 24 (2020) (Gorsuch, J., concurring) (per curiam) ("Rational basis review is the test this Court normally applies to Fourteenth Amendment challenges, so long as they do not involve suspect classifications based on race or some other ground, or a claim of fundamental right." (emphasis in original)).

To state a claim that succeeds under rational basis review, El-Bayeh must plausibly allege that Sierra's decision to ticket him was not "rationally related to a legitimate governmental interest."  U.S. Dep't of Agric. v. Moreno, 413 U.S. 528, 533 (1973); accord United States v. Montijo-Maysonet, 974 F.3d 34, 44 (1st Cir. 2020).  Here, his allegations show the opposite. The Commonwealth of Massachusetts undoubtedly has a legitimate interest in ensuring traffic safety within its jurisdiction.  Ry. Express Agency, Inc. v. N.Y., 336 U.S. 106, 109 (1949); accord Becky's Broncos, LLC v. Town of Nantucket, 138 F.4th 73, 80 (1st Cir. 2025).  The question that remains, then, is whether Sierra's decision to assess a fine against El-Bayeh in the circumstances as El-Bayeh describes them was rationally related to this interest.

The answer is a resounding yes, even under the plaintiff-friendly Rule 12 standard.  In El-Bayeh's own words, Sierra stopped him "because [Sierra] believed [he] was driving seventy-two [MPH] in a fifty-five [MPH] zone."  Doc. No. 24 ¶ 23.  The mere observation of El-Bayeh driving seventeen MPH above the posted speed limit reasonably warrants a stop and a citation.

11

Cf. Mass. Gen. Laws ch. 90, § 17 (codifying speeding as prima facie evidence of violating Massachusetts traffic laws).  Stopping a driver in those circumstances is plainly and rationally related to the Commonwealth's interest in maintaining traffic safety.  The decision to fine a motorist is just as rationally related to that interest, particularly where a record check reveals a driving history with the same kind of infraction on the same highway once before.  In these circumstances, El-Bayeh has not plausibly alleged Sierra violated his right to equal protection under the Fourteenth Amendment.[11]

El-Bayeh's selective prosecution and enforcement claims against Sierra are implausible for a second reason: he has failed to plausibly allege that he is similarly situated to Snow and Blair.  El-Bayeh contends they are similarly situated in all regards, except in their affiliation with a governmental entity.  Doc. No. 24 ¶ 206.  But simply saying this does not make it so.  El-Bayeh cites to United States v. Lewis, 517 F.3d 20, 27 (1st Cir. 2007), to define "similarly situated" offenders as those who have "committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced."  But Lewis itself stresses a focus on "material prosecutorial factors," or those factors that "have some meaningful relationship either to the charges at issue or to the accused—and that might be considered by a reasonable prosecutor."  Id.  Here, such a material factor is squarely conceded in El-Bayeh's own pleadings and sets him apart from the comparators he describes—El-Bayeh's driving record.

During a traffic stop, police officers may perform "ordinary inquiries incident to the stop," such as "checking the driver's license and inspecting the automobile's registration and

---

[11] The only other authority El-Bayeh cites in alleging Sierra abused his enforcement or prosecutorial discretion is buried in an exhibit.  There, El-Bayeh alleges Sierra's conduct violated Mass. Gen. Laws ch. 90C, § 2.  Doc. No. 24-13 at 22.  But Sierra's alleged state-law violation does not fall within the orbit of § 1983.  See Sullivan, 526 U.S. at 49–50.

proof of insurance." Rodriguez v. United States, 575 U.S. 348, 355 (2015) (citation modified). It hardly needs saying that a motorist's driving record, revealed by "checking the driver's license," would be a relevant (and important) factor in an officer's assessment of whether to prosecute an alleged speeding offense.  Cf. Commonwealth v. Rodriguez, 37 N.E.3d 611, 619 (Mass. 2015) (establishing "clear and compelling" government interest in allowing traffic stops for purpose of promoting public safety); United States v. Burleson, 657 F.3d 1040, 1046 (10th Cir. 2011) (stating background check may be run during traffic stop even if motorist's history is irrelevant to stop).  El-Bayeh's driving record was blemished at least by his 2018 citation for traveling more than forty MPH over the speed limit, on the same highway where he was stopped by Sierra.  Doc. No. 24-9 ¶ 89.  El-Bayeh has not alleged that Snow or Blair had a driving record that was similarly blighted.  This further dooms his equal protection claims against Sierra.

By failing to sufficiently allege a violation of his constitutional rights, El-Bayeh has failed to state a claim against Sierra upon which relief may be granted.  Sierra's motion to dismiss is therefore ALLOWED with respect to the selective prosecution and enforcement claims against him in his individual capacity.

IV. <u>CONCLUSION</u>

For the foregoing reasons, Sierra's Motion to Dismiss (Doc. No. 16) and the Commonwealth Defendants' Motion to Dismiss (Doc. No. 20) are ALLOWED.  El-Bayeh's Motion for a Preliminary Injunction (Doc. No. 37) is DENIED as moot.  The Clerk shall enter a separate judgment of dismissal and close this case.  Each party shall bear their own fees and costs.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge